ATTORNEY FOR THE RESPONDENT
*Pro se*

ATTORNEYS FOR THE INDIANA SUPREME COURT
DISCIPLINARY COMMISSION
G. Michael Witte, Executive Secretary
Dennis K. McKinney, Staff Attorney
Indianapolis, Indiana



# In the
# Indiana Supreme Court

No. 49S00-0907-DI-331

IN THE MATTER OF:

LAWRENCE T. NEWMAN,

*Respondent.*

Attorney Discipline Action
Hearing Officer Barbara Collins

**December 20, 2011**

**Per Curiam.**

We find that Respondent, Lawrence T. Newman, engaged in attorney misconduct by failing to comply with a client's reasonable requests for an accounting of the hours he worked prior to being discharged, by charging an unreasonable fee, by failing to withdraw from representation promptly after being discharged, and by failing to return the client's file after its retention was no longer necessary to secure payment of his fee.

For this misconduct, committed with the motivation of gaining unfair leverage in his fee dispute with his client, we find that Respondent should be suspended from the practice of law in this state for at least 18 months without automatic reinstatement.

This matter is before the Court on the report of the hearing officer appointed by this Court to hear evidence on the Indiana Supreme Court Disciplinary Commission's "Verified Complaint for Disciplinary Action," and on the post-hearing briefing by the parties. Respondent's 1987 admission to this state's bar subjects him to this Court's disciplinary jurisdiction. See IND. CONST. art. 7, § 4.

## Background

The Hearing Officer filed her "Report of Findings of Fact and Conclusions of Law" on June 24, 2011. We adopt her findings of fact, which consist primarily of facts stipulated by the parties, and supplement them with additional findings that are either admitted by Respondent or supported by clear and convincing evidence in the record before us.

In April 2006, the father of "M.L." died, leaving an estate that included a closely-held corporation ("Corporation"). M.L. and her sister, the decedent's only surviving children, were appointed as co-special administrators of the estate and directors of the Corporation. M.L. served as president of the Corporation and her sister served as vice president. Disagreements arose between M.L. and her sister and between M.L. and the estate's attorneys regarding the operation of the Corporation and the administration of the estate. The estate's attorneys sought a restraining order against M.L., and the probate court *sua sponte* removed M.L. as co-administrator of the estate.

On September 7, 2006, M.L. retained Respondent to represent her in connection with the foregoing disputes, but not concerning her inheritance from the estate. At that point, M.L. wanted Respondent to undertake a number of actions, including seeking removal of the estate's attorneys, reinstatement of M.L. as co-special administrator of the estate, an accounting of work done for the estate, and appointment of a neutral party to run the Corporation. M.L. signed a fee agreement under which Respondent would be paid $195 an hour, payable only upon receipt of her distribution from the estate, plus 25 percent of M.L.'s distribution.

When M.L. retained Respondent, Judge Charles J. Deiter was presiding in the estate case. Respondent filed an appearance and a motion for disqualification of the judge, which was granted. Judge Deiter's disqualification from the estate case was based on a prior action brought by Respondent and his wife against Judge Deiter and others alleging anti-Semitism in thwarting an attempt by Respondent and his wife to adopt a child. *See* Newman v. State of Indiana, 129 F.3d 937, 940 (7th Cir. 1997).

On September 30, 2006, M.L. sent Respondent a letter requesting him to stop all work and instead act as stand-by counsel in case she had to make a decision or sign documents relating to the estate. On October 4, 2006, M.L. terminated Respondent's employment and asked him to send her a statement for the work he had done. On October 17, 2006, attorney John Price sent a letter to Respondent stating that he was M.L.'s new counsel and requesting from Respondent M.L.'s file and an invoice for his work. Price and M.L. sent several subsequent requests that Respondent withdraw his appearance promptly, return M.L.'s file, and send a statement of his hours. In one letter, Price proposed a settlement regarding Respondent's fee.[1]

On November 17, 2006, Respondent filed a "Notice of Intent to Hold Attorney's Lien" on M.L.'s distribution from the estate for his hourly fee plus 25 percent of the distribution. He filed a motion to withdraw his appearance on November 20, 2006, which was granted the following month. Eventually, in response to a discovery request, he provided raw time sheets to M.L.'s successor counsel on March 31, 2008. He provided a two-page summary of his time to M.L.'s successor counsel on September 30, 2009—nearly three years after the initial request.

On October 7, 2009, the probate court entered an "Order Regarding Retaining Lien," which ordered Respondent to return M.L.'s file to her on her posting of a $150 bond, which she did not post.[2] The probate court thereafter determined Respondent's fee to be $8,428.26, which M.L. paid to him in December 2009. Prior to payment, Respondent refused to return the file to

---

[1] Although Price assisted M.L. in these communications with Respondent, M.L. and Price ultimately did not come to an agreement on Price's representation of her in the estate disputes, and M.L. retained other counsel for that purpose.

2 By this time, she and her successor counsel had been required to litigate for three years without the file, and her counsel stated that its importance had diminished.

M.L., contending that it secured his claim for attorney fees. After the payment, Respondent was willing to allow M.L. to pick up her file at his office.

## Discussion

The Charges against Respondent. The Commission charges that Respondent violated the following Indiana Professional Conduct Rules:

> 1.4(a)(4): "A lawyer shall . . . promptly comply with reasonable requests for information."

> 1.5(a): "A lawyer shall not make an agreement for, charge, or collect an unreasonable fee."

> 1.16(a)(3): "[A] lawyer . . . shall withdraw from the representation of a client if . . . the lawyer is discharged."

> 1.16(d): "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as . . . surrendering papers and property to which the client is entitled . . . . The lawyer may retain papers relating to the client to the extent permitted by other law."

Violation of Rule 1.4(a)(4)—Failure to Respond to Requests for Information. The hearing officer concluded that Respondent violated this rule by failing to provide a timely accounting of the hours he worked despite multiple requests to do so. Respondent contends that these requests were not reasonable because his hours were irrelevant, arguing: (1) under the parties' fee agreement, his entire fee (both hourly and percentage) was to be contingent on M.L.'s distribution from the estate; thus his hours would be irrelevant unless and until there was a distribution; and (2) once he was discharged, his fee would be calculated under *quantum meruit* by the probate court based on the benefit to M.L., not the hours worked by Respondent, recoverable only if M.L. received a distribution from the estate.

Respondent's first argument fails because all of M.L.'s requests came after she discharged him and the contingent fee agreement was no longer operable. As for the second argument, this

4

Court has held that when a fee is determined based on *quantum meruit*, the time expended by the attorney alone is not *controlling*, but the hourly time charges, adjusted for any unproductive or unnecessary efforts, is a likely candidate *as a presumptive measure* of the lawyer's contribution. *See* Galanis v. Lyons & Truitt, 715 N.E.2d 858, 862 (Ind. 1999). Indeed, Respondent's filing after his discharge of his "Notice of Intent to Hold Attorney's Lien" on M.L.'s distribution *for his hourly fee* (plus 25 percent of the distribution) is an admission of the relevance of his hours. Moreover, even if Respondent would not be entitled to a fee of any sort unless M.L. received a distribution from the estate, an accounting of his hours was relevant to M.L.'s attempt (through attorney Price) to settle the matter with him early on rather than having to wait until the estate matters were all resolved and she received her distribution.

Respondent's hours were clearly relevant to his claim for fees after he was discharged. Respondent does not dispute that an accounting could have been done easily and quickly. He admits he could have photocopied his handwritten time sheets in about five minutes. M.L.'s requests for an accounting of Respondent's hours were eminently reasonable, Respondent had no excuse for not providing the information, and we conclude that Respondent violated Rule 1.4(a)(4) by not promptly providing the requested information.

Violation of Rule 1.16(a)(3)—Failure to Withdraw Appearance in a Timely Manner. The hearing officer concluded that Respondent violated Rule 1.16(a)(3) by failing to withdraw his appearance in a timely manner after being discharged. Respondent argues that "timely" does not mean "immediately," and that it was not prudent for him to withdraw from representing M.L. sooner because: (1) M.L. might soon change her mind; and (2) if he withdrew immediately, it would appear that M.L. was manipulating the system by retaining him solely to disqualify Judge Deiter.

Respondent waited over six weeks after he was discharged to file a motion to withdraw his appearance, despite repeated requests by Price and M.L. that he do so. The hearing officer's findings contain nothing to support Respondent's arguments that the possibility that M.L. might change her mind or the possible appearance of manipulation made earlier action imprudent. Moreover, Respondent admitted that he never explained the reasons for his delay to M.L. prior to

5

his withdrawal.    We therefore conclude that Respondent violated Rule 1.16(a)(3) by not withdrawing his appearance in a timely manner.

Violation of Rule 1.5(a)—Charging an Unreasonable Fee.  The hearing officer concluded that Respondent violated Rule 1.5 by "negotiating and entering into a contingency fee agreement when [M.L.] faced no risk of non-recovery" in the estate matter.

Although there were a number of disputes regarding the estate, making the amount of M.L.'s eventual inheritance uncertain, the evidence indicates there was virtually no possibility that M.L. would receive nothing.  M.L. told Respondent the estate was valued at $70 million but was being diminished by mismanagement.   The estate, even without the value of the Corporation, was originally valued at close to $20 million.   M.L. testified that the disputes regarding the estate were eventually resolved through a settlement under which she received $3.5 million.

While we do not adopt the Commission's assertion that a contingent fee agreement is *per se* unethical whenever there is no risk of total non-recovery, we conclude that the evidence supports a conclusion that the contingent fee agreement under the circumstances of this particular case was unreasonable.

Moreover, Rule 1.5(a) prohibits not only making an agreement for an unreasonable fee, but also *charging or collecting* an unreasonable fee.   Even if a fee agreement is initially reasonable, subsequent events may render collection of the fee unreasonable.  *See* Matter of Powell, 953 N.E.2d 1060 (Ind. 2011); Matter of Gerard, 634 N.E.2d 51 (Ind. 1994).

After being discharged, Respondent filed a "Notice of Intent to Hold Attorney's Lien" on M.L.'s distribution from the estate for his hourly fee *plus 25 percent of the distribution*.  He concedes that once discharged, his fee had to be based on *quantum meruit*.  Thus, he had no colorable basis to assert a lien for 25 percent of M.L.'s distribution.  And even after he eventually

6

dropped this claim, the record shows that he asserted a *quantum meruit* claim of $60,000 when he conceded that a fee based on his hourly rate would be around $7,000. [3]

Under the totality of these circumstances, we conclude that Respondent violated Rule 1.5(a) by charging an unreasonable fee.

Violation of Rule 1.16(d)—Failure to Return Client Property Promptly after Discharge. The hearing officer concluded that Respondent violated this rule by failing to return M.L.'s file to her promptly after being discharged. Although Rule 1.16(d) requires a discharged attorney to surrender papers and property to which the client is entitled, it also states: "The lawyer may retain papers relating to the client to the extent permitted by other law." Respondent argues that he properly retained M.L.'s file because he had a valid retaining lien on the file securing payment of his fees and was thus entitled to retain her file until he was either paid or provided with adequate security for payment.

A retaining lien is the common law right of the attorney to retain possession of a client's documents, money, or other property that comes into the hands of the attorney professionally until the balance due him for professional services is paid. *See* State ex rel. Shannon v. Hendricks Circuit Court, 183 N.E.2d 331, 333 (Ind. 1962).

The Commission does not challenge the general validity of retaining liens. It argues, however, that Respondent's retention of M.L.'s file was unnecessary because he had filed and recorded a statutory (or "charging") lien in the estate matter on M.L.'s distribution, which was more than sufficient to secure payment of his fee. [4] Because the statutory lien was not dependent on Respondent's retention of M.L.'s file, the Commission asserts that his continued retention of M.L.'s file was unjustified.

---

[3] Respondent argued in the estate case that his fee should reflect the "unjust enrichment" M.L. received from his unique ability to get Judge Deiter removed from the case, asserting a claim of $60,000. Thus, Respondent was seeking compensation far in excess of his hourly rate for his part in what he insists was M.L.'s unethical manipulation of the legal system by hiring him to get Judge Deiter off the case.

[4] Although Respondent's "Notice of Intent to Hold Attorney's Lien" does not contain a statutory citation, it appears to invoke Indiana Code § 33-43-4-1.

At issue here is not Respondent's work product, but M.L.'s own documents that she entrusted to Respondent while he was her counsel. An attorney may not ethically retain client funds or property that are clearly in excess of what is needed to protect the attorney's claim for fees. In Matter of Marshall, 902 N.E.2d 249 (Ind. 2009), this Court disciplined two attorneys for failing to promptly turn over to their client the proceeds of a lawsuit to the extent the funds were indisputably in excess of the maximum amount needed to secure payment of disputed attorney fees and expenses. "[A] lawyer may not hold funds to which a client is indisputably entitled to coerce the client into accepting the lawyer's contention in a dispute over attorney fees." Id. at 253. A court may require an attorney to turn over documents and other personal property over which he claims a retaining lien if the court provides for adequate security for payment of fees the client owes. *See* Bennett v. NSR, Inc., 553 N.E.2d 881, 883 (Ind. Ct. App. 1990).

Respondent argues that his statutory lien was not adequate security for his fee claim, contending (without citation to the record) that M.L. had challenged the statutory lien's validity until the point the probate court determined the amount of Respondent's fee. The evidence, however, indicates that M.L. never denied that Respondent was entitled to a fee based on *quantum meruit* and contested only the amount of his claim. The *quantum meruit* claim Respondent eventually asserted was just $60,000, and the probate court liquidated at less than $9,000 dollars. The probate court required M.L. to post a bond of only $150 for the return of her file "[b]ecause there is no risk really that . . . whatever decision I make about the fees that it will not be paid."

Attorneys are entitled to payment for their labors and to appropriate security for their fees until paid. An attorney is not, however, entitled to deny a client his or her own property when retention is wholly unnecessary to secure the attorney's claim. We find that in the circumstances of this particular case, Respondent's retaining lien was unnecessary to secure payment of his fee and that retention of M.L.'s file provided him with nothing of value except unfair leverage in the fee dispute with his former client. We therefore conclude that Respondent violated Rule 1.16(d) by refusing to return M.L.'s file to her promptly after payment of his fee was more than adequately secured by alternative means.

Aggravating Circumstances.   "The practice of law is more than a mere vocation undertaken for profit.  A lawyer has a duty to protect and preserve the rights and property of a client.  A fiduciary relationship exists between a lawyer and client, and the confidence which the relationship begets between the parties makes it necessary for the lawyer to act in utmost good faith."  Matter of Lansky, 678 N.E.2d 1114, 1116-17 (Ind. 1997) (citations omitted).  After M.L. entered into the fee agreement with Respondent, she was entitled to change her mind and discharge him at any time, with or without cause, subject to liability for payment of for his services on the basis of *quantum meruit*.  *See* id. at 1116.  "Even if the lawyer has been unfairly discharged by the client, a lawyer must take all reasonable steps to mitigate the consequences to the client."  Prof. Cond. R. 1.16, cmt 9.

After M.L. discharged Respondent, the only issue between them was how much of a fee he was entitled to receive for the limited amount of services he had provided her.  But rather than protecting M.L.'s interests after being discharged, Respondent waged a war of attrition against her, refusing to cooperate with her or her successor counsel in even the smallest way and running up M.L.'s legal bills with protracted litigation in the estate matter.

Respondent attempts to justify his actions in large part by attacking M.L., accusing her of manipulating the legal system and of being a liar, a criminal, and a bigot.  We agree with the hearing officer's finding that there is no credible evidence that Respondent's accusations are true.  In any case, however, a client's misconduct in no way excuses unethical conduct by his or her attorney.

Respondent also accuses the Commission of pursuing him while ignoring more egregious misconduct by other attorneys.  He cites examples of purported misconduct by other attorneys involved in the estate litigation, of which he contends the Commission was aware.  He also details grievances his wife has filed against attorneys in unrelated matters, which he contends the Commission failed to investigate.   Even if his accusations were true, however, the fact that the Commission has not pressed misconduct charges against other attorneys would not relieve Respondent of being answerable to this Court for his.

9

Discipline. "Our analysis of proper sanction entails consideration of the nature of the misconduct, the duty violated by the respondent, any resulting or potential harm, the respondent's state of mind, our duty to preserve the integrity of the profession, the risk to the public should we allow the respondent to continue in law practice, and matters in extenuation, mitigation, and aggravation." Matter of McCarthy, 668 N.E.2d 256, 258 (Ind. 1996).

Had Respondent violated the rules at issue through inadvertence or in a good faith belief that his conduct was proper, or if he had shown any remorse or insight into his misconduct, a relatively mild sanction might be appropriate. Respondent, however, engaged in an unrelenting pattern of clearly unjustified misconduct to gain unfair leverage in his fee dispute with M.L., instead of fulfilling his duty to protect her interests after being discharged. Rather than showing any remorse or insight, he has made inflammatory attacks on his former client and the Commission. "It is this lack of insight that leads us to conclude that a significant sanction is necessary to ensure that the seriousness of [his] misconduct is impressed upon [him]. . . . In light of [his] insistence that [he] did nothing wrong, we have grave concerns that similar misconduct could be repeated in the future." Matter of Winkler, 834 N.E.2d 85, 90 (Ind. 2005).

We conclude that Respondent should be suspended for a period of at least 18 months and required to go through the reinstatement process before resuming practice. Approval of a petition for reinstatement is discretionary and requires clear and convincing evidence of the petitioner's remorse, rehabilitation, and fitness to practice law. *See* Admis. Disc. R. 23(4)(b).

## Conclusion

The Court concludes that Respondent violated the Indiana Professional Conduct Rule 1.4(a)(4) by failing to comply promptly with M.L.'s reasonable requests for an accounting of his hours, Rule 1.5(a) by charging an unreasonable fee, Rule 1.16(a)(3) by failing to withdraw promptly from representation of M.L. after being discharged, and Rule 1.16(d) by failing to return M.L.'s file after its retention was no longer necessary to secure payment of his fee.

10

For Respondent's professional misconduct, the Court suspends Respondent from the practice of law in this state for a period of not less than 18 months, without automatic reinstatement, beginning January 31, 2012. Respondent shall not undertake any new legal matters between service of this order and the effective date of the suspension, and Respondent shall fulfill all the duties of a suspended attorney under Admission and Discipline Rule 23(26). At the conclusion of the minimum period of suspension, Respondent may petition this Court for reinstatement to the practice of law in this state, provided Respondent pays the costs of this proceeding, fulfills the duties of a suspended attorney, and satisfies the requirements for reinstatement of Admission and Discipline Rule 23(4).

The costs of this proceeding are assessed against Respondent. The hearing officer appointed in this case is discharged.

The Clerk of this Court is directed to give notice of this opinion to the hearing officer, to the parties or their respective attorneys, and to all other entities entitled to notice under Admission and Discipline Rule 23(3)(d). The Clerk is further directed to post this opinion to the Court's website, and Thomson Reuters is directed to publish a copy of this opinion in the bound volumes of this Court's decisions.

Shepard, C.J., Dickson, J., and Sullivan, J., concur. Rucker, J., dissents in part with separate opinion.

David, J., did not participate in this case.

**Rucker, Justice, dissenting in part.**

Because there is insufficient evidence to support a violation of Indiana Professional Conduct Rule 1.5(a), and because the sanction imposed on the Respondent is based in part on a violation not charged by the Commission, I respectfully dissent.

Indiana Professional Conduct Rule 1.5(a) provides in relevant part, "A lawyer shall not make an agreement for, charge, or collect an unreasonable fee." In this case the Commission alleged and the Hearing Officer found that Respondent violated this provision by "negotiating and entering into a contingency fee agreement when [M.L.] faced no risk of non-recovery" in the estate matter.

Although the evidence indicates little possibility that M.L. would receive nothing from the estate, still, there were a number of complicated disputes regarding the estate, and M.L. told Respondent the estate was being rapidly diminished by mismanagement. Thus, the amount of M.L.'s eventual inheritance was uncertain. Moreover, part of the consideration for the contingent fee was Respondent's agreement that M.L. would owe him nothing, even the hourly component of his fee, unless and until she received a distribution from the estate. This enabled M.L. to retain Respondent immediately for potentially complex and lengthy litigation without obligation until a future point when funds from the estate would be available. Thus, contrary to my colleagues I am of the view that there is simply nothing in the record to support the conclusion that the contingent fee agreement in this case was unreasonable when initially entered. In essence Respondent did not "make an agreement for . . . an unreasonable fee."

As my colleagues point out there is evidence of record supporting the conclusion that Respondent may have violated Rule 1.5(a) by "charg[ing] or collect[ing] an unreasonable fee." But I make two observations: (1) the Hearing Officer made no findings or conclusions in this regard, and (2) more importantly the Commission never filed charges against Respondent alleging a violation of this provision of the Rule. To conclude that "Respondent violated Rule 1.5(a) by charging an unreasonable fee" Slip op. at 7, decides a question outside the scope of our review and violates the Respondent's right to fundamental due process.

Concluding Respondent did not violate Indiana Professional Conduct Rule 1.5(a) – the most serious charge – I would impose a sanction of 90 days from the practice of law for the remaining violations: Rule1.4(a)(4) (failure to comply with reasonable requests for information); Rule 1.16(a)(3) (failure to timely withdraw his appearance); and Rule 1.16(d) (failure to return M.L.'s file after being discharged).