RESPONDENT PRO SE
Patrick H. Stern
Indianapolis, Indiana

ATTORNEYS FOR THE INDIANA SUPREME COURT
DISCIPLINARY COMMISSION
G. Michael Witte, Executive Secretary
John P. Higgins, Staff Attorney
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 49S00-1205-DI-255



IN THE MATTER OF:

PATRICK H. STERN,

*Respondent.*

Attorney Discipline Action
Hearing Officer Gary L. Miller

**July 2, 2014**

**Per Curiam.**

We find that Respondent, Patrick H. Stern, engaged in attorney misconduct by failing to provide competent representation, representing clients with conflicting interests, asserting frivolous legal positions, and engaging in deceptive practices with a court and the Commission. For this misconduct, we conclude that Respondent should be suspended from the practice of law in this state for at least 18 months without automatic reinstatement.

This matter is before the Court on the report of the hearing officer appointed by this Court to hear evidence on the Indiana Supreme Court Disciplinary Commission's "Verified Complaint for Disciplinary Action," and on the post-hearing briefing by the parties. Respondent's

1987 admission to this state's bar subjects him to this Court's disciplinary jurisdiction. *See* IND. CONST. art. 7, § 4.

## Procedural Background and Facts

The Commission filed its verified complaint against Respondent on May 9, 2012, which was amended on April 29, 2013. After an evidentiary hearing, the hearing officer filed his Report on February 5, 2014, which we now adopt and summarize.

Persons involved in the events alleged by the Commission. The Commission's allegations of misconduct center primarily on Respondent's actions in several cases involving the condemnation and demolition of a building. The three people primarily involved in these allegations, in addition to Respondent, are the following.

➢ DR, an elderly woman, was the owner of a commercial building in Indianapolis in poor condition ("the Building"). DR's greatest fear was that the City of Indianapolis was going to impose financial liability on her because of the Building.

➢ JS, alleged to be DR's common law husband, had no ownership interest in the Building.

➢ JH, a convicted murderer, began working in Respondent's law office after his release from prison as a "contract paralegal," not an employee. Respondent compensated JH with cash and in-kind compensation, e.g., free representation in two criminal cases and a divorce, free lodging, and free use of Respondent's office equipment.

The First Lawsuit. Before DR retained Respondent, the Indianapolis Department of Metropolitan Development (the "DMD") obtained an order to demolish the Building as an unsafe structure. DR then retained Respondent for $300 to represent her in the matter. In addition, Respondent would retain 50% of any recovery by DR against the City of Indianapolis ("the City").

On February 15, 2008, Respondent filed a complaint for judicial review against the DMD ("First Lawsuit") on behalf of both DR and JS, even though JS had no interest in the Building. The complaint for judicial review did not comply with the requirements of Indiana Code § 36-7-9-8(b) that the complaint be verified and filed within 10 days of the date the action was taken.

2

In an attempt to prevent the City from imposing financial liability on DR, Respondent drafted a quitclaim deed by which DR transferred the Building to JH. Respondent began representing JH as well as DR. Because DR quitclaimed her fee simple interest to JH *after* the unsafe building order was issued, the transfer resulted in DR and JH being jointly and severally responsible for demolition and administrative costs. *See* Ind. Code § 36-7-9-12(a). Thus, the transfer of the Building to JH did *not* relieve DR of financial liability, and it created a conflict of interest between of JH and DR.

Respondent filed a "Counter-Complaint for Damages" in the First Lawsuit without leave of court, improperly adding as defendants two city employees ("City Employees") and additional legal theories of recovery. Respondent repeatedly referred to the Building as DR's property, even though he knew DR no longer owned the Building. The first time the court became aware of the transfer of the Building was at a May 7, 2008, hearing when opposing counsel asked DR whether she still owned the Building.

On May 16, 2008, the court affirmed the Order to Demolish, for lack of standing among other reasons. The City demolished the Building in July 2008. DR was assessed $17,200 for the demolition costs for the Building. No appeal was taken.

The Second Lawsuit. On August 6, 2008, Respondent filed a new lawsuit on behalf of DR seeking damages for trespass and destroying her property ("Second Lawsuit"). Respondent named the City Employees as defendants, but he failed to include allegations against them required by Indiana Code section 34-13-3-5(c). Respondent then filed a tort claim notice on behalf of DR on September 8, 2008. Because it alleged violations occurring more than 180 days prior, it was untimely. *See* Ind. Code § 34-13-3-8. The defendants filed a motion for judgment on the pleadings based on untimeliness, governmental immunity, and failure to state a claim. The Second Lawsuit was dismissed in its entirety.

The Third Lawsuit. On January 8, 2009, JH and JS filed a pro se lawsuit against the Director of Metropolitan Development in his official capacity ("Third Lawsuit"), alleging that

3

the City violated their federal and state constitutional rights. After the defendant removed the Third Lawsuit to federal court, Respondent appeared for both JH and JS.

DR was required by statute to notify the DMD within five days of her transfer of the Building to JH, which she failed to do. JH's claim was premised on the allegation that the City had demolished the Building without giving him notice. If JH obtained a judgment against the DMD based on lack of notice, and that lack of notice was caused by DR's failure to inform the DMD of the transfer, DR would be liable to the DMD for the amount of the judgment. *See* Ind. Code § 36-7-9-27(b). Thus, Respondent pursued a case on behalf of one client (JH) which, if successful, would make his other client (DR) liable for the judgment.

The district court granted summary judgment to the defendants, citing multiple grounds, including failure to exhaust state remedies. The Seventh Circuit Court of Appeals affirmed, finding that Respondent's "claims were not ripe and otherwise meritless."

Respondent's relationship with JH. In the course of its investigation, the Commission asked several times about Respondent's relationship with JH. For over two years, Respondent failed to disclose any professional relationship with JH, falsely implying that Respondent had no working relationship with JH. In response to the Commission's eventual allegation that Respondent had concealed the true extent of his relationship with JH, Respondent finally disclosed that JH worked in his office as a paralegal.

**Discussion**

Violations. The Court finds that Respondent violated the following Indiana Professional Conduct Rules by the following misconduct:

*Misconduct during the First, Second, and Third Lawsuits*:
➢ 1.1: Failing to provide competent representation to DR, JS, and/or JH.
➢ 1.7(a): Representing DR, JS, and JH when the representations involved a concurrent conflict of interest.

4

➢ 3.3(a)(1): Knowingly making and failing to correct a false statement of material fact made to the court in a First Lawsuit by continuing to refer to the Property as DR's after she transferred the Property to JH.

➢ 3.1: Asserting positions for which there was no non-frivolous basis in law or fact.

*Misconduct involving JH's position as a paralegal*:

➢ 5.3 and Guideline 9.1: Using a nonlawyer legal assistant who was not an employee.

➢ 1.6: Improperly revealing information relating to Respondent's representation of clients to JH, by allowing JH unsupervised access to such information.

*Misconduct during the Commission's investigation*:

➢ 8.1(b): Failing to disclose to the Commission Respondent's professional relationship with JH to correct the misapprehension created by Respondent that there was no such relationship.

Discipline. Our analysis of appropriate discipline entails consideration of the nature of the misconduct, the duties violated by the respondent, any resulting or potential harm, the respondent's state of mind, our duty to preserve the integrity of the profession, the risk to the public should we allow the respondent to continue in practice, and matters in mitigation and aggravation. *See* Matter of Newman, 958 N.E.2d 792, 800 (Ind. 2011).

In this case, we find the following substantial facts in aggravation: (1) Respondent has previously been disciplined for incompetence and bringing frivolous lawsuits, *see* Matter of Stern, 776 N.E.2d 1208 (Ind. 2002); (2) Respondent's conduct was part of a pattern of misconduct that included failing to attain minimum competence in representing clients, filing multiple frivolous lawsuits, and misleading the court in the First Lawsuit and the Commission in its investigation; (3) instead of accepting responsibility for his actions, Respondent blames the judges in the lawsuits, the Commission, and others; and (4) Respondent has shown no insight into his misconduct.

We also observe that Respondent has shown a lack of basic competence in representing himself in this disciplinary proceeding. For instance, he has filed documents that are riddled with typographical and grammatical errors and that are very difficult to understand. In response to the

Commission's verified complaint, Respondent asserted a number of frivolous affirmative defenses. In responding to the Commission's discovery requests, Respondent repeatedly deleted, renumbered, and added paragraphs to the requests. Despite several opportunities to correct deficiencies in discovery responses, he still failed to respond to some discovery requests, and he gave incomplete, inaccurate or incomprehensible responses to others. In his answer to the amended complaint, Respondent failed to respond to some allegations, responded falsely to some, and responded "denied admitted" to others. Respondent himself could not explain what "denied admitted" meant. Even after several attempts and, according to his own testimony, answering the allegations to the best of his ability, Respondent was unable to draft a legally sufficient responsive pleading.

In light of his serious deficiencies in representing clients and himself and his refusal to acknowledge any misconduct on his part, the Court has grave concerns about Respondent's current fitness to represent clients in the practice of law. We therefore conclude that Respondent should be suspended from practice and undergo a reinstatement proceeding before resuming practice.

**Conclusion**

The Court concludes that Respondent violated the Indiana Rules of Professional Conduct by failing to provide competent representation, representing clients with conflicting interests, asserting frivolous legal positions, and engaging in deceptive practices with a court and the Commission.

For Respondent's professional misconduct, the Court suspends Respondent from the practice of law in this state for a period of not less than 18 months, without automatic reinstatement, beginning August 13, 2014. Respondent shall not undertake any new legal matters between service of this order and the effective date of the suspension, and Respondent shall fulfill all the duties of a suspended attorney under Admission and Discipline Rule 23(26). At the conclusion of the minimum period of suspension, Respondent may petition this Court for reinstatement to the practice of law in this state, provided Respondent pays the costs of this

proceeding, fulfills the duties of a suspended attorney, and satisfies the requirements for reinstatement of Admission and Discipline Rule 23(4) and (18). Reinstatement is discretionary and requires clear and convincing evidence of the attorney's remorse, rehabilitation, and fitness to practice law. *See* Admis. Disc. R. 23(4)(b).

In addition, the Court denies Respondent's motions to investigate the conduct of one of the Commission's staff attorneys.

The costs of this proceeding are assessed against Respondent. The hearing officer appointed in this case is discharged.

The Clerk of this Court is directed to give notice of this opinion to the hearing officer, to the parties or their respective attorneys, and to all other entities entitled to notice under Admission and Discipline Rule 23(3)(d). The Clerk is further directed to post this opinion to the Court's website, and Thomson Reuters is directed to publish a copy of this opinion in the bound volumes of this Court's decisions.

Dickson, C.J., and Rucker, Massa, and Rush JJ., concur.
David, J., concurs in part but dissents regarding the discipline imposed, believing it to be insufficient.