ATTORNEY FOR THE RESPONDENT
Margaret M. Christensen
Indianapolis, Indiana

ATTORNEYS FOR THE INDIANA SUPREME COURT
DISCIPLINARY COMMISSION
G. Michael Witte, Executive Director
Rachel B. Gallagher, Staff Attorney
Larry D. Newman, Staff Attorney
Indianapolis, Indiana

# In the
# Indiana Supreme Court



FILED
Dec 06 2017, 3:10 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

No. 29S00-1704-DI-203

IN THE MATTER OF:

RICHARD S. MOSSLER,

*Respondent.*

Attorney Discipline Action

**December 6, 2017**

**Per Curiam.**

We find that Respondent, Richard Mossler, engaged in attorney misconduct arising from his professional relationship with an out-of-state corporation. For this misconduct, we conclude that Respondent should be suspended from the practice of law in this state for at least six months without automatic reinstatement.

Pursuant to Indiana Admission and Discipline Rule 23(12.1)(b), the Indiana Supreme Court Disciplinary Commission and Respondent have submitted for approval a "Statement of Circumstances and Conditional Agreement for Discipline" stipulating agreed facts and proposed discipline. The Respondent's 1992 admission to this state's bar subjects him to this Court's disciplinary jurisdiction. *See* IND. CONST. art. 7, § 4. The Court approves the agreement and proposed discipline.

**Stipulated Facts**

Since 2008, Respondent's practice has been dedicated almost exclusively to consumer debt resolution. During that time, Respondent has been affiliated with Lexxiom, Inc., a Nevada corporation with headquarters in California. Functions performed by Lexxiom for Respondent have included marketing, client intake, bookkeeping, administration of banking transactions, and communications with clients and debt collectors.

Nonlawyer personnel at Lexxiom would interview potential clients and then forward the information to Respondent, who could accept or reject the client. Under Respondent's standard engagement contract with clients, Respondent would provide non-litigation legal services and litigation consultation for an initial flat fee (usually 8-10% of the amount of debt the client was seeking to resolve) plus monthly maintenance and settlement accumulation fees. Clients also had the option to engage Respondent separately to provide litigation services. After the client and Respondent executed an engagement contract, Lexxiom would notify creditors of Respondent's representation and would undertake communication to negotiate settlements with the creditors.

For those clients not domiciled in Indiana who had a legal claim or defense, Respondent employed attorneys in other states to provide as-needed, state-specific legal counsel to Respondent's clients. Respondent paid those attorneys, who were not associated with Respondent's firm, a monthly retainer.

In connection with his relationship with Lexxiom, Respondent opened a trust account in California. Respondent failed to certify this trust account with the Clerk of the Indiana Supreme Court. Respondent was not a signatory on the account; rather, the only signatories were two nonlawyer corporate executives of Lexxiom. Clients authorized Lexxiom to withdraw agreed attorney fees from their funds held in trust and also to withdraw settlement accumulation fees once sufficient savings had accumulated to negotiate debts. Because of the large number of clients with funds in the trust account and the high volume of daily transactions, withdrawals from and deposits into the trust account were made by Lexxiom on a "batch" basis whereby a single transaction into and out of the trust account would involve multiple clients.

2

As a result of errors by Lexxiom personnel, Respondent's trust account was overdrawn on at least three occasions in December 2015. Due to the batching system used by Lexxiom and his own lack of oversight, Respondent did not immediately realize that his trust account had gone out of balance. After Respondent was alerted to the problem, he engaged an independent accounting firm to reconcile the balance and replenished the funds that mistakenly had been withdrawn from the trust account by Lexxiom.

Respondent did not adequately supervise the client intake, debt settlement, or trust account administration services performed by nonlawyer personnel at Lexxiom.

The parties agree that Respondent violated these Indiana Professional Conduct Rules prohibiting the following misconduct:

1.5(e): Improperly dividing fees between lawyers who are not in the same firm.

1.15(a): Failing to maintain and preserve complete records of client trust account funds, failing to safeguard client funds, and opening and maintaining a trust account in a state other than where the lawyer's office is situated without the consent of the clients.

5.3(a): Failing to make reasonable efforts to ensure that the lawyer's firm has taken measures to assure that a nonlawyer assistant's conduct is compatible with the lawyer's professional obligations.

5.3(b): Failing to discharge responsibilities regarding supervision of nonlawyer assistants.

5.3(c): Ordering or ratifying the misconduct of nonlawyer assistants, or failing to take reasonable remedial action with respect to the misconduct of nonlawyer assistants under the lawyer's supervision.

8.4(a): Knowingly assisting another to violate the Rules of Professional Conduct.

Guideline 9.1: Failing to take reasonable measures to ensure that the conduct of nonlawyer personnel was compatible with the lawyer's obligations under the Rules of Professional Conduct.

Guideline 9.3: Delegating responsibility for establishing attorney-client relationships to a nonlawyer assistant.

Guideline 9.4: Failing to inform clients that nonlawyers performing legal functions were not licensed to practice law.

3

Guideline 9.8:  Splitting legal fees with nonlawyer personnel.

Guideline 9.10:  Failing to ensure that conduct of nonlawyer personnel conformed to the Rules of Professional Conduct.

The parties also agree Respondent violated the following Indiana Admission and Discipline Rules (2016):

2(f):  Failing to notify the Clerk of the existence of an IOLTA trust account.

23(29)(a)(3):  Failing to maintain a ledger with separate records for each client with funds deposited in a trust account.

Finally, the parties agree Respondent violated Rule 7(B) of the Indiana Rules Governing Attorney Trust Account Overdraft Reporting by allowing nonlawyer assistants to be authorized signatories on an attorney trust account, while failing to conduct required periodic reconciliations of the trust account.

The parties cite no facts in aggravation.  In mitigation, the parties cite Respondent's lack of prior discipline, his cooperation with the disciplinary investigation and proceeding, and the remedial measures taken by Respondent once he learned of his trust account problems.

**Discussion and Discipline**

Our analysis of appropriate discipline entails consideration of the nature of the misconduct, the duties violated by the respondent, any resulting or potential harm, the respondent's state of mind, our duty to preserve the integrity of the profession, the risk to the public should we allow the respondent to continue in practice, and matters in mitigation and aggravation.  *See* Matter of Newman, 958 N.E.2d 792, 800 (Ind. 2011).

We have addressed in prior disciplinary cases professional relationships similar in nature to Respondent's affiliation with Lexxiom.  For example, in Matter of Fratini, 74 N.E.3d 1210 (Ind. 2017), the respondent attorney was similarly affiliated with a California corporation that advertised debt-relief services nationwide.  In Matter of Joyce, 9 N.E.3d 142 (Ind. 2014), the attorney was affiliated with an insurance marketing agency that sold to customers, as a "loss

4

leader" intended to generate more lucrative sales of annuities and other insurance products, estate planning packages prepared with only nominal attorney involvement. And in <u>Matter of Dilk</u>, 2 N.E.3d 1263 (Ind. 2014), the attorney accepted thousands of referrals from several out-of-state "foreclosure assistance" entities, had minimal contact with clients or active involvement in their cases, and largely followed the course of action decided upon by the companies. While the particular facts and rule violations in each case differ slightly, ultimately these cases all derive from the same essential problem; namely, the respondent lending his or her imprimatur as an attorney to legal functions performed in large part by a corporation's nonlawyer personnel, without the requisite degrees of direct involvement and oversight mandated by our rules governing attorney conduct.

In <u>Fratini</u>, <u>Joyce</u>, and <u>Dilk</u>, we suspended the respondent attorneys for six months without automatic reinstatement. We agree with the Commission and Respondent that the same sanction is warranted in this case, and we therefore approve the parties' proposed discipline.

## Conclusion

The Court concludes that Respondent violated Professional Conduct Rules 1.5(e), 1.15(a), 5.3(a), 5.3(b), 5.3(c), and 8.4(a); Professional Conduct Guidelines 9.1, 9.3, 9.4, 9.8, and 9.10; Admission and Discipline Rules 2(f) and 23(29)(a)(3) (2016); and Overdraft Rule 7(B). For Respondent's professional misconduct, the Court suspends Respondent from the practice of law in this state for a period of not less than six months, without automatic reinstatement, effective January 17, 2018. Respondent shall fulfill all the duties of a suspended attorney under Admission and Discipline Rule 23(26). At the conclusion of the minimum period of suspension, Respondent may petition this Court for reinstatement to the practice of law in this state, provided Respondent pays the costs of this proceeding, fulfills the duties of a suspended attorney, and satisfies the requirements for reinstatement of Admission and Discipline Rule 23(18).

The costs of this proceeding are assessed against Respondent. The hearing officer appointed in this case is discharged.

All Justices concur.