**Michael T. TAYLOR, Appellant (Petitioner Below),**

v.

**Diane M. Taylor CHAFFIN, Appellee (Respondent Below).**

No. 35A02–8902–CV–00051.

Court of Appeals of Indiana, Second District.

Aug. 20, 1990.

Dennis H. Geisleman, Sowers, Larson, Riebenack & Connolly, Fort Wayne, for appellant.

Stephen J. Michael, Matheny, Hahn & Bailey, Huntington, for appellee.

SULLIVAN, Judge.

Michael J. Taylor (Father) appeals the trial court's contempt citation for failure to pay child support and the order requiring him to pay college expenses for his daughter, Narell.

Father presents the following issues which we restate:

(1) Whether the court erred in denying Father's motion for change of venue;

(2) Whether the court erred in finding Father in contempt for failure to pay child support after Narell turned eighteen;

(3) Whether the court erred in modifying the divorce decree and ordering Father to pay $2,415.00 per semester in college expenses for four semesters provided Narell maintains a 2.0 grade point average.

The parties were divorced on March 27, 1981. Custody of their two children was

awarded to Diane M. (Taylor) Chaffin (Mother). Father was required to pay child support of $100 per week "during the minority of said children or until further order of the Court." Record at 127. The original proceedings and subsequent modifications concerning the older child, Michael, took place in Montgomery County.

On July 22, 1988, Mother petitioned to transfer the cause to Huntington County because she had moved and established her residence there. A hearing was held on the petition and the cause was transferred to Huntington County.

·On August 30, Mother filed her petition for contempt citation against Father for failure to pay child support and petition for modification of the divorce decree to provide for Narell's college expenses. On the same date, the petition was set for hearing on September 30. On September 27, Father, by counsel, moved for a continuance. The court granted the motion and continued the hearing to October 13. Later in the afternoon of September 27, Father moved for a change of venue from the county. A hearing was held on that motion on October 13. The motion was denied following the hearing, and trial was set on Mother's petition for October 26.

Trial took place as scheduled and on November 29, 1988, the court found Father in contempt for failure to pay child support in the amount of $4,180.00 but found Father was entitled to a credit for out-of-court payments in the amount of $668.00. The court also modified the divorce decree by requiring Father to pay Narell's college expenses in the amount of $2,415.00 per semester for a total of four semesters, provided Narell maintained a 2.0 grade point average.

## I.

█ Father argues that the court erred in denying his Motion for Change of Venue. He maintains that because he filed for a change of venue from the county within thirty days, he was entitled to an automatic change of venue under Ind.Trial Rule 76(3). Although T.R. 76 provides the time limits and methods of exercising a change of venue from the judge or county, the right to a change of venue from the judge or county is a substantive right which only the legislature may confer. *K.B. v. S.B.* (1981) 1st Dist.Ind.App., 415 N.E.2d 749, 756. The legislature has conferred the right to a change of judge in "any matter of a civil, statutory or equitable nature not triable by a jury." I.C. 34–2–12–1 (Burns Code Ed. Repl.1986). Therefore, Father would certainly have been entitled to a change of judge if he had so requested. However, Father requested a change of venue from the county.

█ A change of venue from the county is not permitted in post-dissolution proceedings involving custody, visitation and child support. *See, State ex rel. Jemiolo v. Laporte Circuit Court* (1982) Ind., 442 N.E.2d 1060; *Linton v. Linton* (1975) 2d Dist., 166 Ind.App. 409, 339 N.E.2d 96. In *Linton,* we stated:

"With respect to matters of child support and modifications thereof it is established that the jurisdiction of the court which entered the original decree is continuing. Changes of venue from the county as to requested modifications are not contemplated nor permitted."[1] 339 N.E.2d at 97.

█ We are not unmindful that the court having original jurisdiction over the dissolution proceedings in this case was the Montgomery Circuit Court and that the cause was subsequently transferred to the Huntington Circuit Court at Mother's request. However, such procedure is authorized by statute. Indiana Code 31–2–7–1 (Burns Code Ed.Repl.1987) provides:

"Whenever there is pending in any court in the state of Indiana any order requiring a parent to make regular payments for the support of his or her children, subsequent to the divorce or dissolution of the marriage of the parents of such

---

1. Moreover, the present case included a contempt proceeding for failure to pay child support. A change of venue is likewise unavailable for contempt proceedings. *Zillmer v. Lakins* (1989) 3d Dist.Ind.App., 544 N.E.2d 550, 551.

children, and it is shown to the court in which such order is pending that the parent or other person rightfully having custody of such children is residing in a different county in the state of Indiana from that in which the divorce or dissolution was obtained and that the other parent of such children no longer resides or is not regularly found in the county in which the divorce or dissolution was obtained, and that it would be in the best interests of the said children, the court may order the proceedings with all papers and files pertaining to such order or orders for support and certified copies of all such orders transferred to the court having jurisdiction over such matters in the county in which the parent or other person having custody of such children is residing. *The court to which such proceedings are transferred shall accept the same and shall thereafter have jurisdiction over such children and matters relating to their support by the parent so ordered.* [Emphasis supplied.]

This statute permits the cause to be transferred to the county in which the custodial parent and children live. However, the statute also clearly provides that the transferee court shall then have continuing jurisdiction over the children and matters relating to their support. Therefore, the Huntington Circuit Court did not err in denying Father's motion for change of venue from the county.

## II.

■ Father next argues that the court erred in finding him in contempt of court for failure to pay child support for Narell. His argument is twofold. He first maintains that both he and Mother understood that his support obligations would cease when Narell turned eighteen. He also argues that Narell was emancipated when she turned eighteen.

The dissolution decree ordered Father to pay child support "during the minority of said children". Record at 128. Father asserts that the parties both thought minority ended when the children attained the age of eighteen. However, I.C. 31–1–11.5–

12(d) clearly states that the duty of support continues until the child attains the age of 21. In *Brokaw v. Brokaw* (1980) 3d Dist. Ind.App., 398 N.E.2d 1385, the dissolution decree incorporated an agreement which specifically provided that support payments would continue only until the child reached the age of eighteen. The court held that the duty of support does not cease until the age of 21.

"A parent cannot, by his own contract, relieve himself of the legal obligation to support his minor children." *Brokaw*, 398 N.E.2d at 1388.

Therefore, Father's duty continued until Narell turned 21 and the court did not err in so finding.

■ Indiana Code 31–1–11.5–12(d) provides that if the child is emancipated prior to the age of 21, the duty to support the child will cease at the time of emancipation. Father argues that Narell was emancipated when she finished high school and turned eighteen. Emancipation occurs when the child places himself beyond the control, custody and care of his parents. *Brokaw, supra*, 398 N.E.2d at 1388. An emancipated child enjoys a new relationship between himself and his parents, relieving the parents from the responsibilities of support. *Green v. Green* (1983) 4th Dist.Ind. App., 447 N.E.2d 605, 609.

"What constitutes emancipation of a minor child is a question of law, but whether there has been an emancipation is a question of fact. Emancipation of a child is never presumed, but must be established by competent evidence. Such evidence may be circumstantial. It may also be demonstrated by express agreement or by the conduct and acts of the parent and child." *Brokaw, supra*, 398 N.E.2d at 1388. (Citations omitted.)

Father lists, in his brief, the following factors which support a determination that Narell was emancipated:

"1. She was *able* to support herself after graduating from high school.

2. In her attempts to satisfy her mother's wishes that she get a college education she has earned money

and acted independently of her parents in spending it.

3. She acts independent of her parents in completing classes, selecting majors and allowing any parental control over her choices." Brief of Appellant–Petitioner at 15.

■ With regard to the fact that Narell may have been capable of supporting herself, Father confuses I.C. 31–1–11.5–12(d)(1) with I.C. 31–1–11.5–12(d)(3). The former states, in relevant part, that the duty to support continues until the child is 21, unless:

"(1) The child is emancipated prior to reaching twenty-one (21) years of age in which case the child support, except for the educational needs outlined in subsection (b)(1), terminates at the time of emancipation."

Indiana Code 31–1–11.5–12(d)(3), however, provides a separate and distinct exception to the general rule that support obligations continue until the child reaches age 21. *See, e.g., Brancheau v. Brancheau* (1990) 1st Dist.Ind.App., 555 N.E.2d 1315. The statute states that the duty of child support ceases if:

"(3) the child:

(A) Is at least eighteen (18) years of age;

(B) Has not attended a secondary or post-secondary school for the prior four (4) months and is not enrolled in such a school; and

(C) Is or is capable of supporting himself through employment."

■ In the present case, the evidence was clear that Narell was enrolled in and attending classes at Ball State University. Therefore, I.C. 31–1–11.5–12(d)(3) is not applicable. The determination of whether the Narell is emancipated is therefore governed by I.C. 31–1–11.5–12(d)(1). Our inquiry under that section is not whether the child is capable of supporting herself but whether the child is in fact supporting herself without the assistance of her parents.

Father states that Narell had a full time job in the summer and a part-time job during the school year. He maintains that she uses the money she earns to pay for some of her living expenses including sorority expenses, gas for her car, utilities, some groceries and incidentals. Also, she signed a lease on a condominium, handles her own bank accounts, buys her own groceries, and lives away from home while attending school. It may be noted that many children who attend college away from home have experiences not dissimilar from Narell's. Although the evidence establishes some independence by Narell from her parents, it does not establish emancipation. *See, e.g., Brokaw, supra,* 398 N.E.2d at 1388. The record reflects that Mother provided Narell with money to pay for housing, food, health insurance, clothing, and college expenses. This evidence shows that Narell still depended upon her Mother for basic support and was not, therefore, emancipated. The court did not err in finding Father in contempt of court for failure to pay back support.

### III.

Father next argues that the court erred in modifying the divorce decree and ordering him to pay college expenses in the sum of $2,415.00 per semester for the next four semesters. Father contends that the evidence did not establish that Narell had the ability or aptitude to complete college with a degree or that Father had the financial ability to pay for Narell's college education.

Father relies on I.C. 31–1–11.5–12(b)(1) which provides:

"(b) The child support order may also include, where appropriate:

(1) sums for the child's education in elementary and secondary schools and at institutions of higher learning, taking into account the child's aptitude and ability and the ability of the parent or parents to meet these expenses."

Father also relies on our opinion in *Giselbach v. Giselbach* (1985) 2d Dist.Ind.App., 481 N.E.2d 131. In that case, we held that I.C. 31–1–11.5–12 contemplates that the court will conduct a comprehensive analysis of the factors enumerated in the statute prior to entering an order directing pay-

ment of college expenses. *Id.* at 134. We there reversed the court's order directing payment of college expenses because there was "no indication that the trial court ... conducted the appropriate inquiry into the child's aptitude for the requested education or into the parents' ability to finance such education." *Id.*

However, in the present case, the record reflects that the court did consider both Narell's aptitude for college and Father's ability to pay. Father presented evidence that Narell had a poor average in high school, that she was admitted to Ball State on a probationary basis and had only achieved a grade point average of 1.88 after two years in college. He further maintains that Narell was, at the time of the hearing, lacking sufficient credit hours compared to other full time students who have attended college for two years. Father argues that this evidence shows that Narell will not get a degree from college because she has not attained the requisite 2.0 grade point average necessary to graduate from Ball State, and if she does graduate, it will not be within four years.

In this case, the court's order clearly reflects a consideration of the relevant factors in that it requires Narell to maintain a 2.0 grade point average each semester and by limiting the duration of the educational support to four semesters.

Father argues that the court's order failed to take into account his ability to pay Narell's college expenses. Father presented evidence that he worked as a manager of a restaurant and earned $2,264.00 per month in net income. He further presented an estimate of his budget which indicated that his monthly expenses exceeded his income. He contends that this evidence demonstrates he does not have the ability to meet Narell's college expenses.

However, the court, in determining whether the non-custodial parent has the ability to meet college expenses, is not confined to a consideration of a party's current weekly net earnings. *See Wendorf v. Wendorf* (1977) 3d Dist., 174 Ind.App. 172, 366 N.E.2d 703. The recently adopted Child Support Guidelines though not direct-

ly applicable are worthy of note. They advise the court to consider "all sources of income and education assistance available to the children and parents" when assessing whether to award college expenses as an element of support. Ind.Child Support Guideline 3(E)(3).

In the present case, Father testified that he earned $30,000 in 1986 and $29,000 in 1987. He testified that he was behind on his expenses because he had recently lost his job and was unemployed for seven weeks, but that he was currently working as a manager at a restaurant. This evidence is sufficient to indicate that Father's financial difficulties were temporary, and, absent evidence to the contrary, it was not unreasonable for the court to conclude that Father could contribute, or secure assistance to contribute, $2,415.00 per semester in college expenses.

As earlier noted, the court made the order conditional upon Narell's ability to maintain a 2.0 grade point average. The court also limited Father's exposure to four semesters, and allowed Father to make each semester payment in two installments. We therefore hold that the order was appropriate under the circumstances.

The judgment is affirmed.

SHIELDS, P.J., and HOFFMAN, J., concur.