1999-NMSC-002

971 P.2d 390

**Tracy Ann DUGIE, Petitioner–Appellee,**

v.

**Charles Doyle CAMERON,
Respondent–Appellant.**

No. 25,140.

Supreme Court of New Mexico.

Dec. 18, 1998.

Reynolds' Law Firm, P.C., John W. Reynolds, Silver City, for Petitioner.

William Towle, Cliff M. McIntyre, Albuquerque, for Respondent.

**OPINION**

SERNA, J.

{1} Charles Doyle Cameron (Respondent–Appellant) appeals from the Sixth Judicial District Court's (Sixth District) order denying his motion to dismiss Tracy Ann Dugie's (Petitioner–Appellee) petition to modify visitation for lack of jurisdiction. The Court of Appeals certified to this Court the issue whether a district court which rendered

the original divorce decree retains exclusive jurisdiction over subsequent motions when one party remains in the original county and the other party, along with the children, have moved to another county within the state. We hold that although both the Sixth District and the Second Judicial District Court (Second District) have concurrent jurisdiction, modifications of child custody orders must be filed in the district court which rendered the initial decree because proper venue is within that court. We reverse the court's order and dismiss.

## Facts and Background

{2} Cameron and Dugie divorced in 1991 in the Second District. The couple has two minor children. Soon after the divorce, Dugie and the children moved to Grant County in 1991. In 1995, the Second District entered a stipulated order concerning visitation.

{3} In July of 1997, Dugie filed a petition to modify visitation in the Sixth District, in Grant County. Cameron filed an answer and counterclaim for defamation and slander in August, which included an objection to venue, that is still pending in the Sixth District. Cameron filed a change of venue motion in October, which the Sixth District denied the following month. In December of 1997, Cameron filed a motion to dismiss the petition for lack of jurisdiction.

{4} In response to Cameron's motion to dismiss for lack of jurisdiction, the Sixth District judge found that both the 1991 and 1995 Second District matters had been settled, and that the present issue arose from different facts, relying upon *Ortiz v. Gonzales,* 64 N.M. 445, 450–52, 329 P.2d 1027, 1030–32 (1958). Although noting cases from other states and secondary authority which supports Cameron's view that the court which renders the initial decree with respect to child custody issues continues to have "exclusive jurisdiction" over other courts within the state, the judge denied his motion.

## Standard of Review

{5} We review the Sixth District's conclusions of law de novo, and we will "not disturb the trial court's factual findings that are supported by substantial evidence." *Barnae v. Barnae,* 1997–NMCA–077, ¶ 11, 123 N.M. 583, 943 P.2d 1036, *cert. denied,* 123 N.M. 446, 942 P.2d 189 (1997).

## Discussion

{6} Although both parties, as well as the Sixth District judge, have focused on jurisdiction, we believe venue is determinative in this case. While other states sometimes use jurisdiction and venue as interchangeable terms when discussing cases of this type, we distinguish between the two terms. As Cameron notes, the Legislature has provided that the "district court shall have exclusive jurisdiction of all matters pertaining to the ... custody ... of the children until the parents' obligation of support for their children terminates." NMSA 1978, § 40–4–7(G) (1997). However, "venue is not to be equated with jurisdiction.... 'Jurisdiction goes to the power of a court to entertain the cause, while venue simply goes to the convenient and proper forum.'" *State ex rel. Dep't of Pub. Safety v. One 1986 Peterbilt Tractor,* 1997–NMCA–050, ¶ 23, 123 N.M. 387, 940 P.2d 1182 (quoting *Sierra v. Torres (In re Estate of Owens),* 89 N.M. 420, 422, 553 P.2d 700, 702 (1976)) (citation omitted), *cert. denied,* 123 N.M. 229, 938 P.2d 204 (1997). Assuming, for example, that Cameron relocated to another state, the Second District would have jurisdiction to hear this matter over courts of that other state, as provided by statute.[1] However, under Section 40–4–7(G), district courts throughout New Mexico have concurrent jurisdiction, and the issue is then which court is the proper venue to hear the matter. On this point, the Supreme Court of Kentucky held that "[w]hen the custody dispute is wholly intrastate, the issue is not jurisdiction, it is venue. In such circumstances, any circuit court in Kentucky possesses jurisdiction to

---

1. *See* NMSA 1978, § 40–10–4(B) (1989) ("A district court of New Mexico which is competent to decide child custody matters has jurisdiction to make a child custody determination by modification decree of a prior New Mexico decree if, since the prior New Mexico custody determination, New Mexico has remained the residence of the child or any contestant in the prior custody determination.").

decide the case; the only question is which of Kentucky's 120 circuit courts is the appropriate venue." *Pettit v. Raikes*, 858 S.W.2d 171, 172 (Ky.1993).

{7}  As is the case with interstate jurisdiction for child custody, many states hold that proper venue for intrastate custody modification is with the court that rendered the initial decree. *See Taylor v. Chaffin*, 558 N.E.2d 879, 881 (Ind.Ct.App.1990) (" 'With respect to matters of child support and modifications thereof it is established that the jurisdiction of the court which entered the original decree is continuing.  Changes of venue from the county as to requested modifications are not contemplated nor [sic] permitted.' " (quoting *Linton v. Linton*, 166 Ind. App. 409, 339 N.E.2d 96, 97 (Ind.Ct.App. 1975))).  In Texas, for example,

> [i]nitially, the [court which rendered the initial decree] acquired dominant jurisdiction over the divorce proceedings.  Dominant jurisdiction is a common law concept which is not based upon lack of jurisdiction, but on the grounds of comity, vexatious litigation, or the avoidance of a multiplicity of suits.  The general common law rule in Texas is that the trial court in which a suit for divorce is first filed acquires dominant jurisdiction to the exclusion of other coordinate courts.  A subsequent suit in another court having jurisdiction involving the same parties in controversy must be dismissed or abated.

*Ault v. Mulanax*, 724 S.W.2d 824, 828 (Tex. App.1986) (citations and footnote omitted); *see also Wolfe v. Wolfe*, 64 N.C.App. 249, 307 S.E.2d 400, 404 (N.C.Ct.App.1983) (noting that, in competing courts within the state, "[i]t is well established in North Carolina that the court which first obtains jurisdiction and enters an order concerning child custody or support is the only proper court in which to bring an action for modification of custody or support").

■ {8}  As noted above, the Sixth District found that *Ortiz* controls the present case and supports venue in the Sixth District. We respectfully conclude that the Sixth District's reliance upon *Ortiz* is misplaced.  *Ortiz* concerned a dispute over property arising out of a divorce proceeding in which the ex-husband owned an undivided one-half interest, a third party owned the other one-half interest, and the ex-wife intervened.  *Ortiz*, 64 N.M. at 447, 329 P.2d at 1029.  We limited our holding in *Ortiz* to property matters which are "apparently settled," and it is thus too factually different to guide the present case.  *Id.* at 451, 329 P.2d at 1032.  The present case involves the ongoing questions regarding custody and visitation of Dugie's and Cameron's children, a matter which, as the 1995 modification of the original 1991 Second District decree illustrates, is not settled as a matter of law.  For cases such as this, we noted in *Ortiz* that "between courts of concurrent jurisdiction, the court first acquiring jurisdiction of a subject matter retains it to the end." *Id.* at 450, 329 P.2d at 1030.  Thus, we conclude that the Second District, because it rendered the initial decree, is the court of proper venue for this matter.

■ {9}  We next address whether Cameron waived venue.  Dugie contends that Cameron submitted to the jurisdiction of the Sixth District by filing, among other documents, an answer and counterclaim with that court.  *See* Rule 1–012(H)(1) NMRA 1998. We agree with Dugie that venue may be waived in child custody matters. *See Helen F. v. State ex rel. Human Servs. Dep't (In re Kenny F.)*, 109 N.M. 472, 475, 786 P.2d 699, 702 (Ct.App.1990) (refusing to consider improper venue argument in termination of parental rights case "[b]ecause of mother's failure to raise her venue-statute objection at a time when any error could have been cured promptly," and noting that "[u]ncertainty in matters of custody and parental rights can only harm the child, whose interests are paramount in these disputes"), *overruled on other grounds by Roth v. Bookert (In re Adoption of J .J.B.)*, 117 N.M. 31, 868 P.2d 1256 (Ct.App.1993).  Other courts have reached similar results.

> [I]t is particularly appropriate to strictly apply the waiver provisions of [the equivalent of Rule 1–012(H)(1) ] in dependency and termination proceedings.  Parties, attorneys, and the court have an obligation to expedite resolution of child custody and parental rights issues, and to thereby limit

the period during which children face an uncertain future.

*State Dep't of Soc. and Health Servs. v. Johnson (In re Dependency of A.W.),* 53 Wash.App. 22, 765 P.2d 307, 310 (Wash.Ct. App.1988).

> [O]nce a child custody and support order is entered by a court having subject matter jurisdiction and the parties remain the same, the proper venue for any modification of this decree pursuant to [statute] is the court entering the original decree. However, waiver of venue occurs when a modification request is filed with the district court in an improper county and there is no timely demand that the trial be conducted in the proper county.

*Brooks v. Brooks,* 107 N.C.App. 44, 418 S.E.2d 534, 536 (N.C.Ct.App.1992) (citation omitted); *see Snyder v. Snyder,* 18 N.C.App. 658, 197 S.E.2d 802, 804 (N.C.Ct.App.1973) (holding that, in a custody action following a divorce rendered in another court of the state, "[i]t is not a question of jurisdiction, which cannot be waived or conferred by consent, but it is a question of a prior pending action and this can be waived by failure to raise it"). Thus, because district court jurisdiction over child custody matters is statewide, we conclude that the defense of improper venue, if not preserved in the manner provided by Rule 1–012(H)(1), may be waived.

{10} Nevertheless, we disagree with Dugie's assertion that Cameron waived venue in this case. Cameron timely raised the issue of improper venue in his answer and thus did not waive venue.

{11} Dugie contends that the Sixth District is a more convenient forum. Because we hold that the Second District is the proper venue, we discuss whether Dugie may argue her claims in the Sixth District through a change of venue.

> The venue in all civil and criminal cases shall be changed, upon motion, to some county free from exception: (1) whenever the judge is interested in the result of the case ... or (2) when the party moving for a change files in the case an affidavit of himself [or herself], his [or her] agent or

attorney, that he [or she] believes he [or she] cannot obtain a fair trial in the county in which the case is pending because: (a) the adverse party has undue influence over the minds of the inhabitants of the county; or (b) the inhabitants of the county are prejudiced against the party; or (c) because of public excitement or a local prejudice in the county ...; or (d) any other cause stated in the affidavit.

NMSA 1978, § 38–3–3(A) (1965). Thus, in order to change the venue from the Second District to the Sixth District, Dugie must file in the Second District requesting a change of venue to the Sixth District and demonstrate either that the judge is interested in the result or that she could not get a "fair trial" as required by Section 38–3–3(A).

{12} We recently addressed this venue statute and noted that "[o]ur [L]egislature has not ... granted the courts of this state the power to transfer lawsuits from one county to another county unless a fair trial cannot otherwise be obtained." *First Fin. Trust Co. v. Scott,* 1996–NMSC–065, ¶ 12, 122 N.M. 572, 929 P.2d 263 (rejecting forum non convenience for intrastate transfer of a tort case between counties). Further, because the Court decided the case on other grounds, the Court declined to decide whether the language of Section 38–3–3(A)(2)(d) ("any other cause stated in the affidavit") "would allow a party to transfer venue in cases in which there is gross inconvenience." *Id.* ¶ 19. Dugie appears to assert that because she and the children live in another county, it would be more convenient and less of a hardship to her to litigate this case in the Sixth District. While this may be the case, whether the Second District has the authority to transfer this case to the Sixth District rests on whether Dugie can get a fair trial in the Second District. Even under the "other cause" provision of Section 38–3–3(A)(2)(d), the plain language of the venue statute requires that the movant must show that he or she cannot get a fair trial.

{13} Dugie argues that the mobility of families necessitates a process similar to that of interstate facilitation. *See* NMSA 1978, § 40–10–2(C) (1981) (stating that the purpose of the statute, in part, is to "assure that

litigation concerning the custody of a child take place ordinarily in the state with which the child and [the child's] family have the closest connection and ·where significant evidence concerning [the child's] care, protection, training and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and [the child's] family have a closer connection with another state:"). As some commentators note,

> [t]he Uniform Child Custody Jurisdiction Act purports to control the resolution of potential jurisdictional conflicts between the courts of two or more states. However, an identical potential for forum-shopping and conflicting decrees can and often does arise in the context of intrastate litigation under the guise of venue challenges. In many states, venue wars occurring within the microcosm of a state are still encouraged by the same atavistic policies of local control and territoriality which finally prompted the promulgation of the UCCJA for the macrocosmic federal system.

Lucy S. McGough & Anne R. Hughes, *Charted Territory: The Louisiana Experience with the Uniform Child Custody Jurisdiction Act*, 44 La.L.Rev. 19, 24–25 (1983). Dugie's point is well taken. It seems incongruous that Dugie could move out of New Mexico, live in another state for at least six months with the children, *see* § 40–10–4(A)(1)(b) (child's home state), and request the Second District to defer jurisdiction over the matter to a court of that state but could not, under current New Mexico statutes, request that the Second District "defer" venue to the Sixth District. However, this is an anomaly which should be decided by statute and is therefore a matter for legislative resolution.[2]

### Conclusion

{14} A court which renders the initial decree in child custody and visitation proceedings is the proper venue for subsequent modifications over other district courts of this state. The Second District is the court of proper venue over the Sixth District to hear this matter. We reverse the Sixth District and remand with instructions to dismiss the action.

{15} **IT IS SO ORDERED.**

FRANCHINI, C.J., BACA and MINZNER, JJ., concur.

---

2. Because Cameron continues to reside in Bernalillo County, even some of the venue change mechanisms in other states would not contemplate a change of venue to the Sixth District in this case. For example, in *Taylor*, the appellate court noted that the court which rendered the original decree properly transferred it to another circuit court at the mother's request, because a statute permitted the transfer of a case to the county in which the custodial parent and the children reside. *Taylor*, 558 N.E.2d at 881–82. However, under Indiana's change of venue statute, the transfer of venue is limited to those situations where the non-custodial parent either no longer resides or is not regularly found in the county that rendered the. initial decree. *Id.* at 882. *See generally* Sybil Hope Stephens, *Louisiana's New Venue Law for Child Custody Suits: A Critique*, 45 La.L.Rev. 107, 118 (1984) (noting that by statute, "the parish in which the original decree was rendered is still a proper venue under the new provision, but it is not an exclusive venue" and that the legislature favors the court which rendered the initial decree because it "remains 'familiar with the circumstances of the case' and able to 'rule in the best interest of the minor.'") (footnotes omitted).