**IN THE SUPERIOR OF THE STATE OF DELAWARE**

ONESOURCE VIRTUAL, INC.,    )
    )
    Plaintiff,    )    **C.A. No. N24C-02-019**
    )    **SKR CCLD**
    v.    )
    )
FOSTER POULTRY FARMS, LLC,    )
    )
    Defendant.    )

Submitted: July 31, 2024
Decided: October 21, 2024

*Upon Defendant's Motion to Dismiss or Stay,*
**DENIED.**

## MEMORANDUM OPINION AND ORDER

Emily V. Burton, Esquire, Samantha G. Wilson, Esquire, Cheol W. Park, Esquire, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801, Jamil N. Alibhai, Esquire, Toni L. Anderson, Esquire, Jordan, R. Curry, Esquire, 500 North Akard Street, Suite 4000, Dallas, Texas 75201, Attorneys for Plaintiff.

Jack B. Blumenfeld, Esquire, Michael J. Flynn, Esquire, Louis F. Masi, Esquire, Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, Delaware 19899, Brandon F. Renken, Esquire, Danielle M. Charron, Esquire, Mayer Brown LLP, 700 Louisiana Street, Suite 3400, Houston, Texas 77002, Attorneys for Defendant.

**RENNIE, J.**

In this nascent breach of contract litigation, the parties have raised an uncommon—but not novel—iteration of a bi-jurisdictional venue dispute. Defendant Foster Poultry Farms, LLC ("Foster Farms") asserts that it filed a substantially similar action in California (the "California Action") before Plaintiff OneSource Virtual, Inc. ("OneSource") filed its Complaint in this Court. In Foster Farms' view, that means that this Court should defer to the California Action as the first-filed litigation pursuant to *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Engineering*.[1] If the facts were that simple, Foster Farms' argument would be compelling.

The facts are not that simple, though. For one thing, Foster Farms filed the California Action two months after OneSource filed a related case in the federal District of Delaware (the "Federal Action"). Foster Farms only moved to dismiss the Federal Action for imperfect diversity of citizenship the day after it filed the California Action. Moreover, in the parties' governing contract (the "Master Agreement"), Foster Farms expressly covenanted not to object to venue in Delaware "on the theory of forum non conveniens or any other legal theory."[2] And yet, through this motion, Foster Farms has done exactly that.

---

[1] 263 A.2d 281 (Del. 1970).
[2] The Court notes that neither party submitted the Master Agreement as an exhibit. Nevertheless, the parties do not dispute the contents of the Master Agreement. *Compare* D.I. No. 11 (hereinafter, "Mot.") at 11-12 *with* D.I. No. 13 (hereinafter, "Opp'n") at 2-3. Nor does either party suggest that the Court should not consider the Master Agreement's terms at this stage. *See Ham v. LinQuest Corp.*, 2024 WL 1850518, at *2 n.8 (Del. Super. Apr. 18, 2024) (considering contracts not attached

1

Foster Farms defends its position by explaining that the Master Agreement's forum selection provision, Section 8.2, does not use the language required to make Delaware the exclusive forum for disputes. Foster Farms also attempts to remove this *McWane* analysis from the confines of a "venue" challenge by invoking the doctrine of "dominant jurisdiction," which Foster Farms seemingly presents as a challenge to this Court's subject matter jurisdiction.

For the reasons expressed herein, notwithstanding the considerable overlap with the California Action, the Court will neither dismiss nor stay this action. Section 8.2 does not necessarily preclude Foster Farms from filing elsewhere, but it does preclude Foster Farms from objecting to venue in Delaware. And Foster Farms cannot alter the procedural framework for its motion by referencing an inapposite legal theory that does not exist in Delaware—or any other state besides Texas. Delaware courts enforce contracts as they are written. Here, the Master Agreement unambiguously states, in all capital letters, that Foster Farms would not object to venue in Delaware under any legal theory. The Court will not indulge a litigation strategy that so patently thwarts the plain language of the parties' governing agreement. Therefore, Foster Farms' Motion to Dismiss or Stay is **DENIED**.

---

to the pleading because they were both "integral to the Complaint and incorporated by reference therein." (citing *In re Sante Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 69-70 (Del. 1995))).

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. *The Underlying Contract Dispute*

The substance of OneSource's claim is not at issue in this motion, so the Court only offers a brief recitation of the allegations to provide context.

OneSource, a Delaware corporation with its principal place of business in Texas, is a global enterprise that "provides human resource and financial services to middle and large market customers."[3]  Foster Farms, a California limited liability company with its principal place of business in California, is an agricultural business that "focuses on the farming, production, and distribution of chicken."[4]

In September 2020, OneSource and Foster Farms executed the Master Agreement and later entered multiple statements of work that became integrated into the Master Agreement.[5]  The basic purpose of the Master Agreement was for OneSource to provide payroll-related services to Foster Farms.[6]  Naturally, the Master Agreement obligated Foster Farms to pay for the services that OneSource provided.[7]

According to OneSource, the parties' dealings went smoothly until mid-2022.[8] But OneSource alleges that Foster Farms then breached the Master Agreement by

---

[3]  D.I. No. 1 (hereinafter, "Compl.") ¶¶ 5-6.
[4]  *Id.* ¶¶ 7-8.
[5]  *Id.* ¶¶ 13-14.
[6]  *Id.* ¶ 2.
[7]  *Id.* ¶ 15.
[8]  *Id.* ¶ 20.

failing to sign off on change orders despite Foster Farms "requesting additional services, changing the parameters of the requested services multiple times, and receiving the requested services."[9]  OneSource adds that Foster Farms failed to provide certain data that OneSource needed to perform its work, which OneSource alleges was an additional breach of the Master Agreement.[10]

By the end of 2022, OneSource had submitted invoices totaling about $1.2 million to Foster Farms, which Foster Farms did not pay.[11]  In May 2023, OneSource submitted notice that it was terminating the Master Agreement due to Foster Farms' alleged breaches.[12]  According to OneSource, the Master Agreement allows it to recover "the anticipated value" of certain services in the event of a breach-based termination, so OneSource seeks an additional $1.6 million from Foster Farms, plus attorneys' fees.

The lone provision of the Master Agreement relevant to this motion is Section 8.2.  That provision states:

> Governing Law and Venue. AS A MATERIAL INDUCEMENT AND CONSIDERATION TO [ONESOURCE] FOR ENTERING INTO THIS AGREEMENT, [FOSTER FARMS] AGREES THIS AGREEMENT, ITS INTERPRETATION AND ENFORCEMENT, SHALL BE GOVERNED BY THE LAWS OF THE STATE OF DELAWARE, WITHOUT REGARD TO ITS PRINCIPLES CONCERNING CONFLICTS OF LAWS.  AS A FURTHER

---

[9]  *Id.* ¶ 23.
[10]  *Id.* ¶¶ 25-26.
[11]  *Id.* ¶ 27.
[12]  *Id.* ¶ 29.

INDUCEMENT TO [ONESOURCE], [FOSTER FARMS] AGREES IT WILL IRREVOCABLY SUBMIT ITSELF TO THE PERSONAL AND SUBJECT MATTER JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN NEW CASTLE COUNTY, DELAWARE, AND WILL NOT OBJECT TO SUCH VENUE ON THE THEORY OF FORUM NON CONVENIENS OR ANY OTHER LEGAL THEORY. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, AND SUBJECT TO THE PROVISIONS OF THIS AGREEMENT, THE PARTIES HERETO IRREVOCABLY CONSENT TO AND DO HEREBY WAIVE ALL RIGHTS TO DEMAND A TRIAL BY JURY IN CONNECTION WITH ANY LEGAL PROCEEDING ARISING UNDER OR RELATING TO THIS AGREEMENT.[13]

## B. *Procedural History*

This litigation, or at least a version of it, began in the United States District Court for the District of Delaware when OneSource filed its complaint in the Federal Action on November 16, 2023.[14]  OneSource voluntarily dismissed the Federal Action on February 2, 2024 in response to a motion to dismiss that Foster Farms filed on January 19, 2024.[15]  Foster Farms' motion in the Federal Action explained that a member of Foster Farms is a Delaware entity, which belied OneSource's assertion of diversity jurisdiction.[16]  Therefore, the District of Delaware never had subject matter jurisdiction over this dispute.

---

[13]  Mot. at 11-12 (emphasis added).
[14]  Mot., Ex. C.
[15]  Mot., Ex. D; Mot., Ex. E.
[16]  Mot., Ex. D.

On January 18, 2024—two months after OneSource filed the Federal Action, and one day before Foster Farms moved to dismiss the Federal Action—Foster Farms filed the California Action.[17] Foster Farms brought claims for breach of contract, fraud, negligent misrepresentation, and unfair competition, essentially laying out its version of the parties' dispute.[18] In March 2024, OneSource moved to dismiss that case based, in part, upon venue arguments that largely mirror Foster Farms' arguments here.[19] On August 23, 2024, the Merced County Superior Court denied the venue-related portion of OneSource's motion in the California Action.[20]

On February 2, 2024—the same day OneSource voluntarily dismissed the Federal Action, and fifteen days after Foster Farm's filed the California Action—OneSource filed its Complaint in this Court.[21] Foster Farms filed its Motion to Dismiss or Stay on March 11, 2024.[22] OneSource opposed the motion on April 1, 2024.[23] Foster Farms replied to the opposition on April 11, 2024.[24] The Court heard oral argument on July 31, 2024.[25]

---

[17] Mot., Ex. A.
[18] *Id.*
[19] Opp'n, Ex. A.
[20] D.I. No. 20, Ex. 1.
[21] *See* Compl.
[22] *See* Mot.
[23] *See* Opp'n.
[24] *See* D.I. No. 16 (hereinafter, "Reply").
[25] D.I. No. 19.

## II. PARTIES' CONTENTIONS

### A. *Foster Farms' Contentions*

Foster Farms' chief argument is a straightforward *McWane* analysis, explaining that the California Action is a substantially similar, first-filed litigation in a court capable of doing prompt and complete justice, so this Court should defer to that action.[26] Foster Farms adds that dismissal would be appropriate because the California Action subsumes the issues in this action.[27]

Appended to its *McWane* analysis, Foster Farms addresses the elephant in the room—Section 8.2. The thrust of its argument is that Section 8.2 establishes permissive jurisdiction in Delaware but not mandatory or exclusive jurisdiction.[28] Foster Farms cites caselaw holding that exclusive forum selection clauses must either use the word "exclusive" or otherwise indicate that disputes can only be brought in the selected forum.[29] Foster Farms acknowledges that it "agreed . . . that it would not object to venue based on *forum non conveniens* or any other legal theory" but says, "[t]his language . . . does not establish mandatory jurisdiction or venue in Delaware."[30] Foster Farms' analysis omits any suggestion of what that language *does do* in its view.

---

[26] Mot. at 4-11.
[27] *Id.* at 16-17.
[28] *Id.* at 11-16.
[29] *Id.* at 12-14.
[30] *Id.* at 15.

Foster Farms' reply brief generally advances the same arguments, but it makes some additional points. For one, Foster Farms asserts that it "has not run afoul [of] the Master Agreement's express waiver, because [the waiver] only prohibits objections to venue '[o]n the theory of forum non conveniens or any other legal theory.'"[31] Its argument continues: "Foster Farms is not objecting to venue. Instead, Foster Farms is asserting the dominant jurisdiction of the first-filed California Litigation."[32] The brief, however, does not elaborate on the doctrine of dominant jurisdiction.[33] Finally, Foster Farms responds to OneSource's analysis of the relevant *Cryo-Maid*[34] factors, essentially arguing that because it is located in California, California is the most convenient forum.[35]

## B. *OneSource's Contentions*

Expectedly, OneSource primarily relies upon Foster Farms' wavier of venue objections in the Master Agreement and Delaware's emphatically pro-contractarian jurisprudence.[36] OneSource goes a step further and argues that Section 8.2 operates

---

[31] Reply at 9 (second alteration in original).

[32] *Id.*

[33] The Court notes that Foster Farms' briefing uses the term "dominant jurisdiction" six times, and Foster Farms reiterated at oral argument that this doctrine was the basis of its motion. *See* Mot. at 5, 6, 17; Reply at 9, 17. At no point did Foster Farms clarify what it meant by "dominant jurisdiction," except to note that it was different than a venue objection.

[34] *Gen. Foods Corp. v. Cryo-Maid, Inc.*, 198 A.2d 681 (Del. 1964).

[35] Reply at 17-21.

[36] Opp'n at 6-7.

as a mandatory forum selection clause because Foster Farms "irrevocably submit[ted] itself" to personal and subject matter jurisdiction in Delaware.[37]

Aside from relying on Section 8.2, OneSource asks the Court to treat this case as first-filed under *McWane* in recognition of its relationship to the Federal Action and the anticipatory nature of the California Action.[38] Based on that premise, OneSource argues that the *Cryo-Maid* factors do not reflect the "overwhelming hardship" Foster Farms must show to receive relief.[39] As an alternative argument, OneSource says that even a neutral application of the *Cryo-Maid* factors under the *Gramercy*[40] test still weighs in favor of denying this motion.[41]

## III. STANDARD OF REVIEW

The question of the applicable standard of review is more substantive here than in many cases. That is because Section 8.2 purports to waive objections to venue but not subject matter jurisdiction.[42] Normally, a *McWane* first-filed analysis, which is "rooted in *forum non conveniens* doctrine,"[43] proceeds under Superior Court Civil Rule 12(b)(3) and relates to whether Delaware is an "improper venue."[44]

---

[37] *Id.* at 13-16.
[38] *Id.* at 8-9.
[39] *Id.* at 10-13.
[40] *Gramercy Emerging Mkts. Fund v. Allied Irish Banks, P.L.C.*, 173 A.3d 1033 (Del. 2017).
[41] Opp'n at 16-18.
[42] *See Hudson v. Beebe Med. Ctr.*, 2023 WL 6134736, at *1 n.1 (Del. Super. Sept. 19, 2023) (noting "the parties may not waive subject matter jurisdiction" (quoting *Webster v. Brosman*, 2019 WL 5579489, at *1 (Del. Super. Oct. 29, 2019))).
[43] *Gramercy*, 173 A.3d at 1038.
[44] *See Ent. Data Oracle, Inc. v. iSpot.tv, Inc.*, 2022 WL 17481944, at *2 (Del. Super. Dec. 7, 2022).

Foster Farms, though, moved under both Rule 12(b)(3) and Rule 12(b)(1), the latter of which pertains to subject matter jurisdiction.[45]

Put simply, Rule 12(b)(1) is inapplicable here. "[T]he proper motion for disputing forum invokes Rule 12(b)(3) and presents a defense of improper venue."[46] Rule 12(b)(1) only applies in the context of a forum dispute when a party fails to raise Rule 12(b)(3) at the outset of the case but nevertheless has a basis to petition the court to voluntarily decline jurisdiction in favor of another forum.[47] Foster Farms did not miss its opportunity to invoke Rule 12(b)(3), so there is no reason to resort to Rule 12(b)(1) aside from skirting the plain language of Section 8.2.

Presumably recognizing the venue-specific limitation imposed by Section 8.2, Foster Farms strives to portray its *McWane* analysis as something other than a venue objection. Thus, Foster Farms asserts: "Foster Farms is not objecting to venue. Instead, Foster Farms is asserting dominant jurisdiction of the first-filed California Litigation."[48] The doctrine of "dominant jurisdiction" is roughly analogous to the *McWane* doctrine in that it prioritizes first-filed actions; but, notably, courts have no discretion to disregard the dominant jurisdiction of the court where the first action was filed.[49]

---

[45] Del. Super. Ct. Civ. R. 12(b)(1).
[46] *Gandhi-Kapoor v. Hone Cap. LLC*, 307 A.3d 328, 343 (Del. Ch. 2023).
[47] *Id.* at 340-45.
[48] Reply at 9.
[49] *See In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 294 (Tex. 2016).

What Foster Farms fails to mention is that the dominant jurisdiction rule is endemic to Texas—a jurisdiction where no action relevant to this case is pending. The Court's research reveals only five uses of the phrase "dominant jurisdiction" by a state court outside of Texas—never in Delaware or California—and each of those isolated instances relates to Texas law.[50] Moreover, even in Texas, dominant jurisdiction only applies among different Texas courts, not to forum disputes that cross state lines.[51] Foster Farms has not suggested any reason for the Court to engraft a procedural rule that only applies between Texas counties onto this Delaware-California forum dispute. In any event, Texas courts have held that "dominant jurisdiction pertains to venue, not subject-matter jurisdiction."[52] Accordingly—no matter how Foster Farms wants to frame it—Foster Farms' motion objects to this venue, not this Court's jurisdiction.

---

[50] *Charleen J. v. Blake O.*, 855 N.W.2d 587, 595 (Neb. 2014) (quoting *Lee v. GST Tranp. Sys., LP*, 334 S.W.3d 16, 18 (Tex. App. 2008)); *Breaux v. Avondale Indus., Inc.*, 842 So.2d 1115, 1121 (La. Ct. App. 2003) (quoting *Hartley v. Coker*, 843 S.W.2d 743, 747 (Tex. App. 1992)); *Indiana Ins. Co. v. Am. Cmty. Servs., Inc.*, 718 N.E.2d 1147, 1156 (Ind. Ct. App. 1999) (applying *res judicata* principles to an action decided in Potter County, Texas); *Dugie v. Cameron*, 971 P.2d 390, 392 (N.M. 1998) (quoting *Ault v. Mulanax*, 724 S.W.2d 824, 828 (Tex. App. 1986)); *Olsen v. Olsen*, 575 N.W.2d 874, 878 (Neb. 1998) (citing *Clawson v. Millard*, 934 S.W.2d 899 (Tex. App. 1996)).

[51] *See Griffith v. Griffith*, 341 S.W.3d 43, 53-54 (Tex. App. 2011) ("[T]he doctrine of dominant jurisdiction . . . applies when multiple proceedings are filed in different Texas counties. . . . This doctrine of dominant jurisdiction, however, does not apply to suits pending in other states." (citations omitted)). The *Griffith* opinion explains that when litigation is pending in multiple states, Texas courts apply a discretionary "comity" test, similar to Delaware's *McWane* analysis. *Id.* at 54 (citations omitted).

[52] *Fontenot v. Fontenot*, 667 S.W.3d 894, 910 (Tex. App. 2023) (citing *Gordon v. Jones*, 196 S.W.3d 376, 382-83 (Tex. App. 2006)); *Id.* at 909 n.6 ("Despite its name, the doctrine of dominant jurisdiction is not jurisdictional. Dominant jurisdiction applies when venue is proper in two or more Texas counties or courts." (citations omitted)).

11

With that settled, the Court notes that under Rule 12(b)(3), "[m]otions to stay in favor of litigation elsewhere are not granted as a matter of right; instead, the decision 'rests within the sound discretion of the trial court.'"[53] The defendant bears the burden of establishing a basis for relief, but "the Court 'is not shackled to the plaintiff's complaint and is permitted to consider extrinsic evidence from the outset.'"[54] Even where relief under Rule 12(b)(3) is warranted, "dismissals are rarely granted when the first-filed doctrine is invoked."[55]

## IV. DISCUSSION

The Court's analysis here is simplified somewhat by the fact that the Court of Chancery resolved a closely analogous fact pattern in *Utilipath, LLC v. Hayes*.[56] There, the defendants had filed an action that was substantially similar to the Delaware litigation in the Eastern District of Pennsylvania before the plaintiff filed in Delaware.[57] The defendants argued that under *McWane*, the second-filed Delaware action should be dismissed or stayed.[58] The plaintiff responded that under

---

[53] *Zurich Am. Ins. Co. v. Sterigenics U.S., LLC*, 2024 WL 324094, at *5 (Del. Super. Jan. 26, 2024) (citations omitted).
[54] *Id.* (quoting *Sperling & Slater v. SilkRoad, Inc.*, 2022 WL 16910563, at *1 (Del. Super. Nov. 14, 2022)).
[55] *Id.* at *8 (quoting *Ent. Data Oracle*, 2022 WL 17481944, at *2).
[56] 2015 WL 1744163, at *4-5 (Del. Ch. Apr. 15, 2015).
[57] *Id.* at *2.
[58] *Id.* at *3.

*Ingres Corp. v. CA, Inc.*,[59] a valid forum selection clause takes priority over a *McWane* analysis.[60] The forum selection clause in *Utilipath* stated:

> THE PARTIES AGREE THAT JURISDICTION AND VENUE IN ANY ACTION BROUGHT BY ANY PARTY PURSUANT TO THIS AGREEMENT SHALL PROPERLY (BUT NOT EXCLUSIVELY) LIE IN ANY STATE COURT OF THE STATE OF DELAWARE LOCATED IN NEW CASTLE COUNTY OR THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE. BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY IRREVOCABLY SUBMITS TO THE JURISDICTION OF SUCH COURTS FOR ITSELF AND IN RESPECT OF ITS PROPERTY WITH RESPECT TO SUCH ACTION. *THE PARTIES IRREVOCABLY AGREE THAT VENUE WOULD BE PROPER IN SUCH COURT, AND HEREBY WAIVE ANY OBJECTION THAT SUCH COURT IS AN IMPROPER OR INCONVENIENT FORUM FOR THE RESOLUTION OF SUCH ACTION.*[61]

Much like Foster Farms, the defendants in *Utilipath* claimed that the non-exclusive nature of the forum selection clause meant *McWane* deference was still applicable.[62]

The Court of Chancery rejected the defendants' argument and denied the motion without conducting a *McWane* analysis.[63] The court instead emphasized Delaware courts' respect for parties' contractual arrangements and the unambiguous language foreclosing objections to venue in Delaware.[64] The court explained:

> Here, the parties bargained for a valid contractual agreement prohibiting either side from objecting to jurisdiction or venue in this Court for a lawsuit arising out of the Redemption Agreement. The fact

---

[59] 8 A.3d 1143 (Del. 2010).
[60] *Utilipath*, 2015 WL 1744163, at *3.
[61] *Id.* at *4 (emphasis in original).
[62] *Id.*
[63] *Id.*
[64] *Id.*

that jurisdiction and venue for suits related to the Redemption Agreement also may be proper in other courts does not detract from the plain language of Section 7.8, which definitively provides that jurisdiction and venue *are* proper here, making dismissal inappropriate.[65]

Our Supreme Court accepted that reasoning when recounting *Ultilipath* in a later case, stating: "In *Utilipath*, . . . the parties expressly designated Delaware in the forum selection clause, *thus barring inconvenience objections in Delaware*."[66]

That directly applicable precedent makes clear that even though Section 8.2 of the Master Agreement did not prevent Foster Farms from filing in California, it does prevent Foster Farms from objecting to venue in Delaware. Accordingly, the Court cannot dismiss this action under Rule 12(b)(3). That does not quite end the analysis, though.

"The Superior Court, like all trial courts, has inherent discretion to control its own docket and scheduling."[67] This "inherent power" imbues the Court with the "authority to grant a stay."[68] For the same reason that parties cannot contractually confer subject matter jurisdiction upon a court,[69] parties cannot contractually remove

---

[65] *Id.* (emphasis in original).

[66] *GXP Cap., LLC v. Argonaut Mfg. Servs., Inc.*, 253 A.3d 93, 100 (Del. 2021) (emphasis added).

[67] *Slade v. Slate*, 746 A.2d 277 (Del. 2000) (TABLE) (citations omitted).

[68] *Logan v. Loco Fla., LLC*, 2024 WL 1191990, at *3 (Del. Super. Mar. 20, 2024) (quoting *Joseph v. Shell Oil Co.*, 498 A2d 1117, 1123 (Del. Ch. 1985)).

[69] *See Graciano v. Abode Healthcare, Inc.*, 2024 WL 960946, at *8 (Del. Ch. Mar. 4, 2024) (quoting *Thompson v. Lynch*, 990 A.2d 432, 434 (Del. 2010)).

a court's discretion to manage its docket.[70]  Therefore, "in light of the non-exclusive nature of Section [8.2], this Court conceivably could exercise its broad discretion to stay this action if the relevant considerations militated in favor of a stay."[71]

The *Utilipath* court was not explicit about what considerations were "relevant" in its view.  It did mention "the relatively early stage of this litigation" as one factor weighing against a stay.[72]  The court also briefly mentioned the comity and efficiency rationales that inform a *McWane* analysis.[73]  Last, the *Utilipath* court discussed the fact that a key issue in this dispute "may or may not be arbitrable."[74]  Notably, the *Utilipath* court did not discuss the *Cryo-Maid* factors that underlie the various species of *forum non conveniens* analyses.[75]

Assuming the *Cryo-Maid* factors apply here, as the Supreme Court's discussion in *GXP Capital* suggests, they are not particularly instructive.  Foster Farms stresses that its primary operation and its witnesses are located in California, which Foster Farms argues means all the applicable factors weigh in favor of staying

---

[70]  If they could, the Court suspects one result would be a wave of contractual clauses mandating expedited litigation whether or not such treatment was warranted.

[71]  *Utilipath*, 2015 WL 1744163, at *4.

[72]  *Id.*

[73]  *Id.* at *5.

[74]  *Id.*

[75]  *See GXP Cap.*, 253 A.3d at 100-01.  Those factors are: (1) "the relative ease of access to proof"; (2) "the availability of compulsory process for witnesses"; (3) "the possibility to view the premises, if appropriate"; (4) "all other practical problems that would make the trial easy, expeditious, and inexpensive"; (5) "whether the controversy is dependent upon Delaware law, which the courts of this State should decide rather than those of another jurisdiction"; and (6) "the pendency or non-pendency of a similar action in another jurisdiction." *Id.* at 101 (quoting *Aranda v. Philip Morris USA Inc.*, 183 A.3d 1245, 1251 (Del. 2018)).

this action.[76]  But OneSource both negotiated and performed its contractual obligations "completely remotely out of [OneSource's] Dallas office" and its "witnesses are spread out across the country."[77]  The Court notes, too, that the relevant inquiry is whether Delaware is an *inconvenient* forum, not whether California is a more convenient forum.[78]  Foster Farms' argument focuses on the latter, which is "'irrelevant' to the mandated analysis."[79]  Foster Farms also acknowledges that "Delaware law governs the Master Agreement" but argues that this factor is nonetheless inapplicable because this dispute does not raise any novel or important issues of Delaware law.[80]

Nor can the Court accord meaningful weight to any hardship imposed on Foster Farms due to the pending California Action.  Foster Farms imposed that hardship on itself by initiating and maintaining the California Action despite knowing that OneSource was pressing claims in Delaware and knowing that it had

---

[76] Reply at 17-20.  Even though the *Cryo-Maid* factors apply in the context of *McWane*, *see GXP Cap.*, 253 A.3d at 100-01, Foster Farms' opening brief did not analyze or even mention them.  *Cf. Ethica Corp. Fin. S.r.L. v. Dana Inc.*, 2018 WL 3954205, at *3 (Del. Super. Aug. 16, 2018) ("Courts may disregard or deem waived any arguments made in a reply brief which was not raised in the opening brief." (collecting authority)).

[77] Opp'n at 11.

[78] *See Sterigenics*, 2024 WL 324094, at *8 (citing *Mar-Land Indus. Contractors, Inc. v. Caribbean Petrol. Refin., L.P.*, 777 A.2d 774, 778 (Del. 2001)).

[79] *In re Asbestos Litig.*, 929 A.2d 373, 381 (Del. Super. 2006) (quoting *Mar-Land*, 777 A.2d at 779).

[80] Reply at 19-20.

contractually waived all venue objections in Delaware. The Court is not inclined to give Foster Farms the benefit of inefficiency that Foster Farms itself created.

All told, California is likely home to a plurality of the witnesses, but that circumstance is mitigated by the facts that the true situs of the parties' interactions was cyberspace and OneSource's witnesses are diffuse. In any event, a *Cryo-Maid* analysis is not a simple matter of counting the potential witnesses located in each potential forum and deferring to the jurisdiction with the most.[81] That said, the applicability of Delaware law to this dispute is mitigated by the fairly routine legal issues ostensibly presented by this litigation.

Simply put, given the digital nature of the parties' relationship, the *Cryo-Maid* factors do not weigh heavily in either direction. That Foster Farms is physically located outside Delaware is entirely unremarkable among defendants in Delaware's commercial courts.[82] And Foster Farms could have considered that fact before it agreed to waive any objection to litigating in Delaware. Apparently, it did not.

Guided by *Utilipath*, the Court also looks to other considerations to inform this discretionary decision. In these case-specific factors, the Court finds clearer guidance. One paramount consideration is Delaware's "especially strong" respect

---

[81] *In re Asbestos Litig.*, 929 A.2d at 381 ("Analysis of the *Cryo-Maid* factors is not quantitative. . . . They 'merely provide the framework for an analysis of hardship and inconvenience.'" (citations omitted)).

[82] *Cf. Everphone, Inc. v. Go Tech. Mgmt., LLC*, 2023 WL 7996560, at *5 (Del. Super. Nov. 17, 2023) ("[Defendant] says that nothing related to this case happened in Delaware. Maybe so. But that's not the test and is hardly unusual in a commercial lawsuit brought in a Delaware court.").

for parties' contractual arrangements.[83] "[W]ith very limited exceptions, our courts will enforce the contractual scheme that the parties have arrived at through their own self-ordering, both in recognition of a right to self-order and to promote certainty of obligations and benefits."[84] Foster Farms expressly agreed in the Master Agreement that it "will not object to [a Delaware] venue on the theory of forum non conveniens or any other legal theory."[85] Through this motion, Foster Farms has broken that promise. The Court is loath to reward that act by granting a stay.

Also, although Foster Farms contends that "Delaware has no connection to this case, other than supplying the governing law for the Master Agreement,"[86] that is not entirely accurate. OneSource, an entity that has allegedly incurred almost $3 million in damages due to Foster Farms' contractual breaches, is a Delaware corporation.[87] "[W]hen a plaintiff brings suit in its home state, there is a presumption that it has chosen a convenient forum, and that choice should be respected. This presumption also applies to Delaware's corporate citizens."[88] That, too, encourages the Court to allow OneSource to pursue its claim in Delaware.

---

[83] *ABRY Partners V, L.P. v. F&W Acq. LLC*, 891 A.2d 1032, 1059 (Del. Ch. 2006) (collecting authority).

[84] *Outbox Sys., Inc. v. Trimble Inc.*, 2022 WL 3696773, at *10 (Del. Super. Aug. 24, 2022) (quoting *Ascension Ins. Hldgs., LLC v. Underwood*, 2015 WL 256002, at *4 (Del. Ch. Jan. 28, 2015)).

[85] Mot. at 12 (all capitals omitted).

[86] Reply at 21.

[87] Compl. ¶ 5.

[88] *Chubb Custom Ins. Co. v. Nutri/System L.P.*, 1999 WL 1241062, at *3 (Del. Super. Aug. 11, 1999) (citations omitted); *cf. Hall v. Maritek Corp.*, 170 A.3d 149, 159 (Del. Super. 2017) ("Where . . . the plaintiff's choice [of venue] is not its home forum the presumption in the plaintiff's favor

The Court also notes that Foster Farms only won the race to the courthouse through a technicality. OneSource's suit is not a reflexive filing that sought to disrupt ongoing litigation in California. OneSource initiated the parties' legal dispute in the District of Delaware long before Foster Farms filed in California, and the only reason the Federal Action is not the controlling filing is because OneSource failed to ensure perfect diversity. So, even if the California Action would be considered first-filed for *McWane* purposes, the fact remains that Foster Farms, not OneSource, chose to bring litigation in a second jurisdiction.

Relatedly, the Court finds it important that this litigation was filed so close in time to Foster Farms' filing of the California Action. This discretionary analysis would likely be different if OneSource waited until an adverse result on a late-stage dispositive motion in the California Action to file suit here. But that did not happen. Instead, OneSource secured a contractual term expressly designating Delaware as an unassailable forum for disputes, brought the first—albeit imperfect—action in the District of Delaware, and then promptly refiled in this Court. In contrast, Foster Farms filed the California Action while sitting on a jurisdictional challenge to the Federal Action and then contravened the Master Agreement by filing this motion.

_____

applies with less force[.]" (cleaned up) (quoting *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 423 (2007))).

The Court is acutely mindful of the comity and efficiency concerns underlying *McWane* and its progeny. The unusual circumstances of this case, however, dictate that OneSource ought to be permitted to pursue relief in this State. The Court can envision several appropriate ways in which the inefficiency risked by this decision could be mitigated. Allowing Foster Farms to back out of a clear term in the very agreement that governs this dispute for the sake of convenience is not one of them.

## V. CONCLUSION

Through the Master Agreement, the parties expressly designated Delaware as a proper, convenient venue for disputes, even though it is not necessarily the exclusive forum. No sufficient justification exists to disregard the Master Agreement's plain language prohibiting Foster Farms from objecting to this venue. Hence, Foster Farms' Motion to Dismiss or Stay is **DENIED**.

**IT IS SO ORDERED.**

_____
Sheldon K. Rennie, Judge